UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SOHO STUDIO LLC d/b/a TILEBAR,

                    Plaintiff,

         v.

EPSTONE INC. d/b/a ARTISTIC TILE INC. and
ARTISTIC TILE INC.,

                    Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-1487 (RPK) (LGD)

RACHEL P. KOVNER, United States District Judge:

Plaintiff Soho Studio LLC d/b/a TileBar ("TileBar") filed this action against defendants

Epstone Inc. d/b/a Artistic Tile Inc. and Artistic Tile Inc. (collectively, "Artistic Tile"), alleging

trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under

New York common law, and deceptive acts and practices under New York General Business Law,

N.Y. Gen. Bus. L. § 349.  TileBar also seeks a declaratory judgment regarding the parties' rights

and duties with respect to certain copyright rights asserted by Artistic Tile.  Artistic Tile now

moves to dismiss the Lanham Act, common law, and New York General Business Law claims for

failure to state a claim.  For the following reasons, Artistic Tile's motion to dismiss is granted with

respect to the New York General Business Law claim and denied with respect to the Lanham Act

and common law claims.

## BACKGROUND

The following facts are taken from the first amended complaint and assumed true for the

purposes of this order.

Plaintiff TileBar is a "creator and nationwide distributor of tiles, stone, and vinyl flooring."

First Am. Compl. ("FAC") ¶ 14 (Dkt. #13).  TileBar uses various marks to identify its tile products

1

and collections, including but not limited to the "TESSUTO" and "EMPIRE" marks. *Id.* ¶ 15. TileBar is "one of the fastest growing companies in the tile industry . . . due to its ability to reach a widespread audience across multiple channels at a considerably low cost compared to overall sales." *Id.* ¶¶ 26–27. "Whereas the tile industry had previously relied on a wholesale-centric model," *id.* ¶ 25, "TileBar was one of the first tile manufacturers in the industry to use its website as a direct-to-consumer distribution channel," *id.* ¶ 30. TileBar's "market advantage" is "largely fueled by" its "extensive online presence," *id.* ¶ 28, which includes both its "popular tilebar.com website" and various social media accounts, *id.* ¶ 29. TileBar has over 250,000 followers on Instagram and its website generated more than 63,000,000 page views in 2022. *Id.* ¶¶ 30–31. TileBar has also received unsolicited media attention, including features on the television programs Property Brothers and Tiny House Nation. *Id.* ¶ 32.

Artistic Tile is TileBar's "direct competitor" in the business of "manufacturing, importing and distributing tile and stone products throughout the United States." *Id*. ¶¶ 2, 12, 18. Artistic Tile has attempted to "replicate TileBar's success by following its lead in various respects," *id.* ¶ 36, such as by "launch[ing] its own direct-to-consumer e-commerce platform on its website," *id.* ¶ 37. Artistic Tile has also "tried to replicate TileBar's success with respect to several of its tile collections," *id.* ¶ 38, including the TESSUTO and EMPIRE collections, *id.* ¶ 67.

TileBar established the trademark TESSUTO to use in connection with "a line of matte porcelain tiles that feature a slightly worn-in pattern design and which are specially manufactured for TileBar in Italy." *Id.* ¶ 39. TileBar launched the TESSUTO tile collection on June 17, 2019, *id.* ¶ 122, and promoted the new collection by email in August 2019, *id.* ¶ 43. Artistic Tile began using the TESSUTO mark in connection with its own line of tiles in February 2020. *Id.* ¶ 51.

TileBar established the trademark EMPIRE to use in connection with "a line of metallic,

marble tiles that create a sophisticated pattern with an elegant look, which is intended to channel the attitude and affluence of New York City as well as its Art Deco influences." *Id.* ¶ 53.  TileBar launched the EMPIRE tile collection on December 18, 2017, *id.* ¶ 144, and promoted it by email in May 2018, *id.* ¶ 57.  Artistic Tile began using the EMPIRE mark in connection with its own line of tiles in December 2022.  *Id.* ¶ 72.

TileBar alleges that in addition to copying TileBar's marks, "Artistic Tile has scrambled to engineer weak claims of copyright infringement to harass and intimidate TileBar," *id.* ¶ 87, such as by asserting that TileBar's sale of a "carved limestone tile called the Rosette" infringes on Artistic Tile's copyright rights in its "Ziva Leaves design," *id.* ¶ 88.

In February 2023, TileBar brought this action against Artistic Tile, asserting five claims. *See* Compl. (Dkt. #1).  Count I seeks a declaratory judgment that Artistic Tile's copyright rights related to the Ziva Leaves design are invalid and/or unenforceable.  FAC ¶¶ 107–15.  Counts II and III assert claims for false designations of origin and trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), based on Artistic Tile's alleged use of TileBar's TESSUTO and EMPIRE trademarks.  FAC ¶¶ 116–59.  In Counts IV and V, TileBar claims that Artistic Tile's unauthorized uses of the TESSUTO and EMPIRE marks constitute deceptive business acts in violation of New York General Business Law, N.Y. Gen. Bus. L. § 349, FAC ¶¶ 160–68 (Count IV), and unfair competition in violation of New York common law, *id.* ¶¶ 169–76 (Count V).

Artistic Tile moves to dismiss the Lanham Act and state law claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See generally* Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Mot. to Dismiss") (Dkt. #22-1).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid*. (discussing Fed. R. Civ. P. 8).  The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid*. (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (quotation marks omitted).

In reviewing a motion to dismiss, a court may consider only (i) the complaint itself, (ii) documents attached to the complaint or incorporated by reference, (iii) documents the plaintiff both relied on and knew of when bringing suit, and (iv) matters in the public record which are properly subject to judicial notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).  On a motion to dismiss, the court must accept all facts alleged in a complaint as true.  *Iqbal*, 556 U.S. at 678.  The court, however, is not obligated to adopt "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" that are not "supported by factual allegations."  *Ibid.*

**DISCUSSION**

Artistic Tile's motion to dismiss is granted in part with respect to TileBar's New York

General Business Law claims but denied with respect to the Lanham Act and common law claims.

## I.   Lanham Act Claims

Artistic Tile's motion to dismiss TileBar's Lanham Act claims is denied.

### A.  Legal Standard

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that

(1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely

to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84

(2d Cir. 2020) (brackets, citation, and quotation marks omitted); *see Virgin Enters. Ltd. v. Nawab*,

335 F.3d 141, 146 (2d Cir. 2003) (explaining this test applies whether a plaintiff is claiming

infringement of a registered trademark under 15 U.S.C. § 1114(1), or infringement of rights in a

mark acquired by use under 15 U.S.C. § 1125(a)).

Where, as here, the plaintiff's mark is unregistered, the plaintiff bears the burden of proving

that its mark is valid at step one of the analysis.  *See Courtenay Commc'ns Corp. v. Hall*, 334 F.3d

210, 217 (2d Cir. 2003).  An unregistered mark is valid and entitled to protection under the Lanham

Act if it is "sufficiently distinctive."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767

(1992).  To determine whether a mark is sufficiently distinctive, courts begin by classifying the

mark within four categories of increasing distinctiveness: (i) generic, (ii) descriptive,

(iii) suggestive, and (iv) arbitrary or fanciful.  *Abercrombie & Fitch Co. v. Hunting World, Inc.*,

537 F.2d 4, 9 (2d Cir. 1976)*.*  Generic marks, which "consist[] of words identifying the relevant

category of goods or services," are "not at all distinctive and thus are not protectable under any

circumstances."  *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 385 (2d Cir. 2005).  Descriptive

marks, which "consist[] of words identifying qualities of the product," are "not inherently distinctive, but are protectable provided they have acquired secondary meaning." *Ibid.* Suggestive marks, which "suggest a quality or qualities of the product" but only "through the use of imagination, thought and perception," are inherently distinctive and automatically entitled to protection. *Ibid.* (quotation marks and citation omitted). Arbitrary or fanciful marks are also inherently distinctive and protected, as they "do not communicate any information about the product either directly or by suggestion." *Ibid.* (citing *Abercrombie*, 537 F.2d at 9–11). The classification of a mark is a fact-intensive issue usually inappropriate for resolution on the pleadings. *See Courtenay Commc'ns*, 334 F.3d at 215; *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 750–51 (S.D.N.Y. 2021) (collecting cases).

In addition to establishing a valid mark entitled to protection, a plaintiff must show that the defendant's contested use of the mark is likely to cause consumer confusion. *Tiffany & Co.*, 971 F.3d at 84; *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). At this second step of the analysis, courts consider the "*Polaroid* factors" first set forth by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), including: "(1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006).

### B.  TESSUTO Mark

TileBar has adequately pleaded a trademark infringement claim under the Lanham Act with respect to the TESSUTO mark.

6

**1.  TileBar plausibly alleges that the TESSUTO mark is a valid mark.**

First, TileBar has plausibly alleged that the TESSUTO mark is sufficiently distinctive to be a valid mark entitled to protection.  TileBar uses the TESSUTO mark in connection with "a line of matte porcelain tiles that feature a slightly worn-in pattern design and which are specially manufactured for TileBar in Italy."  FAC ¶ 39.  Artistic Tile argues that the mark is generic, or in the alternative descriptive, because the word "tessuto" means "fabric" or "tissue" in Italian, *id.* ¶ 52, and the mark is being used "to refer to tiles that appear to look like fabric," Mot. to Dismiss 9 n.8.  However, while the collection's name may translate to "fabric" in Italian, a mark need not make up words from whole cloth to be distinctive.  Common words can still be distinctive—even arbitrary—depending on the context in which they are used.  For example, "the word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple–A–Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples."  *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992) (citation and alterations omitted).

Even assuming *arguendo* that the mark "tessuto" would be generic if used to describe fabrics or tissues, here it is used to describe tiles and therefore does not "identify[] the relevant category of goods" as generic marks do.  *Star Indus.*, 412 F.3d at 385.  Nor is it evident at this juncture that the TESSUTO mark is merely descriptive, as TileBar plausibly alleges that "the mental leap between the word [tessuto] and the product's attributes is not almost instantaneous." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citation omitted). Rather, drawing the connection between the term "tessuto" and TileBar's line of tiles plausibly "requires imagination, thought and perception," as is the case with suggestive marks. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) (citation omitted).  How best to classify the

TESSUTO mark is a factual question ill-suited for resolution at the pleading stage.  For now, it suffices that TileBar has plausibly alleged that the TESSUTO mark is, at minimum, suggestive and therefore inherently distinctive.

### 2.   TileBar plausibly alleges a likelihood of consumer confusion with the TESSUTO mark.

TileBar has also plausibly alleged that Artistic Tile's actions are likely to cause consumer confusion with the TESSUTO mark.  Generally, "when applying the *Polaroid* factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion."  *World Trade Ctrs. Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-7411 (LTS), 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) (collecting cases).  "Rather, courts have consistently held that likelihood of consumer confusion was adequately pleaded based on facts relating to some, but fewer than all, of the *Polaroid* factors."  *Ibid.*

Here, TileBar has adequately pleaded consumer confusion based on facts relating to at least four of the *Polaroid* factors, including the strength of its mark, the similarity of the two marks, the proximity of the products, and the likelihood of bridging the gap.  At least two other factors, including the quality of products and consumer sophistication, are neutral.

The first factor, the strength of the mark, "is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022).  TileBar plausibly alleges that TESSUTO is at minimum a suggestive mark, and therefore inherently distinctive.  And while "suggestiveness is not necessarily dispositive of the issue of the strength of the mark," *Star Indus.*, 412 F.3d at 385 (citation omitted), TileBar also alleges that the TESSUTO mark has achieved

public recognition in the marketplace, *see, e.g.*, FAC ¶¶ 42–51 (describing successful campaigns to promote the TESSUTO Collection and corresponding web traffic and rise in sales).

The second factor, the similarity of the two marks, also supports a plausible likelihood of confusion, as TileBar's mark ("TESSUTO") and Artistic Tile's mark ("TESSUTO") are not just similar but in fact the same.

The third factor, the proximity of the products, "concerns whether and to what extent the two products compete with each other." *Morningside Grp. Ltd. v. Morningside Cap. Grp. LLC*, 182 F.3d 133, 140 (2d Cir. 1999) (citation omitted). Artistic Tile concedes that this factor favors TileBar, *see* Mot. to Dismiss 15, 18, as TileBar alleges that Artistic Tile is its "direct competitor," FAC ¶ 2, and that both parties are in the tile industry selling similar products, *id.* ¶ 125.

Fourth, the factor of bridging the gap considers "whether the two companies are likely to compete directly in the same market." *Charles of the Ritz Grp. Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987). "Where," as here, "the companies target the same customers, there is no gap to bridge, and this factor leans in favor of the plaintiff." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 240 (S.D.N.Y. 2012).

Other factors—including the quality of products and consumer sophistication—do not weigh in favor of either party. A difference in quality between the parties' products can increase or decrease the likelihood of confusion, *see Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004), but where, as here, a plaintiff does not allege that the defendant's products are inferior in quality, this factor is neutral, *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 389 (S.D.N.Y. 2008). Consumer sophistication also bears on the likelihood of confusion because "[t]he more sophisticated the purchaser, the less likely that she will be confused by similar marks." *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 381

(S.D.N.Y. 2015).  TileBar argues that this factor supports a likelihood of confusion because it "largely offers its products to unsophisticated retail consumers through its direct-to-consumer channels, including its very popular website."  Mem. in Opp'n 22 (Dkt. #22-13).  To be sure, "highly trained professionals" who "know the market" are "less likely than untrained consumers to be misled or confused by the similarity of different marks," and "[r]etail customers . . . are not expected to exercise the same degree of care as professional buyers."  *Virgin Enters.*, 335 F.3d at 151.  But the degree of care exercised by retail customers varies based on the nature of the product at issue.  "Purchasers of higher cost goods or services are presumed to be more discriminating . . . because if the goods are expensive, the reasonably prudent buyer does not buy casually, but only after careful consideration."  *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 592 (S.D.N.Y. 2018) (citations, quotation marks, and brackets omitted).  "[P]urchasers of cellular telephones and the service plans," for example, are "likely to give greater care than self-service customers in a supermarket."  *Virgin Enters.*, 335 F.3d at 151.  Here, "[t]here is no indication that [TileBar's] customers are of any particular sophistication level," and therefore this factor is neutral.  *Flat Rate Movers*, 104 F. Supp. 3d at 381.

As to the factor of actual confusion, Artistic Tile argues that "TileBar does not allege any direct evidence of actual confusion, whether in the form of anecdotal evidence, market research surveys, or otherwise."  Mot. to Dismiss 16.  However, as TileBar observes, *see* Mem. in Opp'n 21, "[a]t the motion to dismiss stage . . . that showing is not necessary, provided that the Complaint adequately pleads a likelihood of confusion."  *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21-CV-891 (PAE), 2021 WL 4340648, at *4 n.3 (S.D.N.Y. Sept. 22, 2021) (rejecting defendant's argument that plaintiff failed to state a claim because the complaint "allege[d] absolutely no specific instances of actual confusion"); *see also Guthrie Healthcare Sys. v.*

*ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." (citation and quotation marks omitted)).

Taken as a whole, TileBar's pleadings plausibly demonstrate a likelihood of consumer confusion with the TESSUTO mark based on several *Polaroid* factors.  Accordingly, Artistic Tile's motion to dismiss TileBar's Lanham Act claim related to the TESSUTO mark is denied.

### C.  EMPIRE Mark

TileBar also adequately pleads a trademark infringement claim under the Lanham Act with respect to the EMPIRE mark.

### 1.  TileBar plausibly alleges that the EMPIRE mark is a valid mark.

TileBar has plausibly alleged that the EMPIRE mark is sufficiently distinctive to be a valid mark entitled to protection under the Lanham Act.  "Empire" is an English word that usually refers to "a group of countries under a single authority, such as the Roman Empire."  FAC ¶ 66.  TileBar uses the EMPIRE mark to "identify a line of metallic, marble tiles . . . intended to channel the attitude and affluence of New York City as well as its Art Deco influences."  *Id.* ¶ 53.  Like "tessuto," the word "empire" does not "identify[] the relevant category of goods" (i.e., tiles) as a generic mark would.  *Star Indus.*, 412 F.3d at 385.  Artistic Tile appears to concede that the EMPIRE mark is not generic, but it contends that the mark is descriptive because geographic terms are descriptive, and New York is the "Empire State."  Mot. to Dismiss 19.  However, the cases Artistic Tile cites in support of this argument deal with the terms "New York City," "NYC," and "New York."  *See ibid.*  Unlike those examples, "Empire" is not by itself a geographical term.  Artistic Tile additionally argues that the EMPIRE mark is descriptive because it is "channel[ing]

the attitude and affluence of New York City." *Id.* at 20 (citing FAC ¶ 53). However, "the mental leap between the word"—empire—"and the product's attributes"—metallic, marble tiles—"is not almost instantaneous," as with descriptive marks. *Cross Com. Media*, 841 F.3d at 162 (citation omitted). To the extent the EMPIRE mark communicates any information about the tile collection, it requires "the use of imagination, thought and perception." *Star Indus.*, 412 F.3d at 385 (quotation marks and citation omitted). Indeed, even more imagination is required to draw the connection between the word "empire" and TileBar's corresponding line of tiles than with "tessuto," which at least refers in translation to a type of material with certain tangible qualities, if not ones usually associated with tiles. Thus, TileBar has plausibly alleged that the TESSUTO mark is suggestive, if not arbitrary, and therefore inherently distinctive.

### 2. TileBar plausibly alleges a likelihood of consumer confusion with the EMPIRE mark.

TileBar's pleadings also demonstrate that Artistic Tile's actions are likely to cause consumer confusion with the EMPIRE mark for substantially the same reasons as with the TESSUTO mark. First, TileBar plausibly alleges that the EMPIRE mark is inherently distinctive and has achieved public recognition in the marketplace. *See, e.g.*, FAC ¶¶ 56–65 (describing successful campaigns to promote the EMPIRE Collection and corresponding web traffic and rise in sales). Second, TileBar's mark ("EMPIRE") and Artistic Tile's mark ("EMPIRE") are not just similar but in fact the same. Third, TileBar alleges that Artistic Tile is its "direct competitor," *id.* ¶ 2, and that both parties are in the tile industry selling similar products, *id.* ¶ 125, demonstrating proximity of the products. Finally, because TileBar and Artistic Tile already target the same customers, there is no gap to bridge. TileBar has therefore pleaded consumer confusion with the EMPIRE mark based on facts relating to at least four of the *Polaroid* factors, and at least two other

factors are neutral, *see supra* pp. 9–10.  Accordingly, Artistic Tile's motion to dismiss TileBar's Lanham Act claim related to the EMPIRE mark is denied.

## II.  Common Law Unfair Competition Claim

Artistic Tile's motion to dismiss TileBar's common law unfair competition claim is denied for substantially the same reasons as its motion to dismiss the Lanham Act claims.  "Under New York law, common law unfair competition claims closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent."  *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (citation omitted).  "Bad faith is presumed where the defendant intentionally copied the plaintiff[']s mark."  *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013).  Here, TileBar plausibly alleges that "when Artistic Tile started using identical TESSUTO and EMPIRE trademarks it was aware of TileBar's prior use."  FAC ¶ 75.  According to the complaint, "TileBar and Artistic Tile are no strangers to each other as they are direct competitors in the tile industry and have previously litigated other intellectual property disputes."  *Id.* ¶ 12.  Upon launching the TESSUTO and EMPIRE collections, TileBar extensively promoted the collections with large-scale and successful media campaigns.  *Id.* ¶¶ 43–51, 57–65.  Nearly a year after the launch of TileBar's TESSUTO collection, and years after the launch of TileBar's EMPIRE collection—once the collections were already well-established and known among the public—Artistic Tile launched its own identically named tile lines.  *Id.* ¶¶ 67–74.  These factual allegations support an inference that Artistic Tile was aware of and intentionally copied TileBar's TESSUTO and EMPIRE marks.  For this reason and the reasons discussed in connection with TileBar's Lanham Act claims, TileBar has plausibly alleged an unfair competition claim under New York common law.

### III.   New York General Business Law Claim

Artistic Tile's motion to dismiss TileBar's New York General Business Law claim is granted. "[T]he prevailing view in the Second Circuit is that 'trademark infringement claims are not cognizable under [N.Y. Gen. Bus. L.] § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.'" *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (brackets, ellipses, and citation omitted).  "[I]njury or harm that satisf[ies] this standard include[s] potential danger to the public health or safety, indicating that commercial claimants under [N.Y. Gen. Bus. L.] § 349 must allege conduct that has significant ramifications for the public at large in order to properly state a claim." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 306 (E.D.N.Y. 2014) (brackets, quotation marks, and citation omitted).  TileBar has not made this showing, as the complaint "alleges no facts suggesting anything beyond the general consumer confusion normally found in a trademark infringement case." *Ibid.*  Accordingly, TileBar's New York General Business Law claim is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part.  TileBar's New York General Business Law claim is dismissed.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  September 4, 2024
          Brooklyn, New York